# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **DEREK LAVONN BERRY** : | |
| 12007 Timberlake Dr. : | |
| Cincinnati, Ohio 45249 : | |
| : | **Case No.: 18-cv-459** |
| **Plaintiff,** : | |
| : | **Judge** |
| v. : | |
| **ARAMARK SERVICES, INC.** : | |
| Serve Statutory Agent: : | **Jury Demand Endorsed Hereon** |
| CT Corporation System : | |
| 4400 Easton Commons Way Suite 125 : | |
| Columbus, Ohio 43219 : | |
| and : | |
| **CARTER BROTHERS, LLC** : | |
| Serve Statutory Agent: : | |
| CT Corporation System : | |
| 4400 Easton Commons Way Suite 125 : | |
| Columbus, Ohio 43219 : | |
| and : | |
| **CARTER BROTHERS ARAMARK** : | |
| **INTEGRATED FACILITIES** : | |
| **MANAGEMENT, LLC** : | |
| Serve Statutory Agent: : | |
| CT Corporation System : | |
| 1201 Peachtree St. NE : | |
| Atlanta, GA 30361 : | |
| and : | |
| **JOHN CARTER, INDIVIDUALLY** : | |
| 3015 RN Martin St. : | |
| East Point, GA 30344 : | |
| **Defendants.** : | |

## COMPLAINT

NOW COMES Plaintiff Derek LaVonn Berry ("Plaintiff") and proffers this Complaint for damages against Defendant Aramark Services, Inc. ("Defendant Aramark"), Defendant Carter Brothers, LLC ("Defendant Carter Brothers"), Defendant Carter Brothers Aramark Integrated Facilities Management, LLC ("Defendant Carter Brothers-Aramark"), and Defendant John Carter, individually ("Defendant J. Carter") (collectively, "Defendants").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, and Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111 ("Chapter 4111").

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiff's claims arising under the law of the United States and over actions to secure equitable and other relief.

3. This Court has jurisdiction over Plaintiff's claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4. Venue is proper in this forum pursuant to 28 U.S.C. §1391 because Plaintiff entered into an employment relationship with Defendants in the Southern District of Ohio and performed his job duties predominately there and Defendants are doing and have done substantial business in the Southern District of Ohio.

## THE PARTIES

5. Plaintiff Derek LaVonn Berry is an individual, a United States citizen, and a resident of the state of Ohio.

6. At all times relevant herein, Plaintiff was an "employee" of Defendants as that term is defined in the FLSA and O.R.C. Chapter 4111.

7. Defendant Aramark is a foreign corporation doing business in the Southern District of Ohio.

8. Defendant Carter Brothers is a foreign limited liability company doing business in the Southern District of Ohio.

9. Defendant Carter Brothers-Aramark is a foreign limited liability company doing business in the Southern District of Ohio.

10. Defendant J. Carter is an individual, a United States citizen, and a resident of the state of Georgia.

11. At all times relevant herein, Defendants were all covered "employers" as that term is defined in the FLSA and O.R.C. Chapter 4111.

12. At all times relevant to this action, Defendants were engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendants constituted an enterprise engaged in commerce within the meaning of the FLSA.

13. At all times relevant to this action, there was significant interrelation of operation between the Defendants.

14. At all times relevant to this action, there was significant common management between the companies, as Defendant Carter Brothers Aramark Integrated Facilities Management, LLC had no management staff of its own.

15. At all times relevant to this action, Defendants utilized centralized control of labor relations, as Defendant Carter Brothers Aramark Integrated Facilities Management, LLC had no labor relations staff of its own.

16. At all times relevant to this action, there was common ownership of Defendant Carter Brothers Aramark Integrated Facilities Management, LLC, as it was owned in its entirety by Defendant Carter Brothers and Defendant Aramark.

17. At all times relevant to this action, Defendant J. Carter was the owner of Defendant Carter Brothers.

18. At all times relevant to this action, Defendant J. Carter exercised significant operational control over issues such as hiring, firing, rates of pay, and hours worked for employees of Defendant Carter Brothers.

## FACTUAL BACKGROUND

19. Plaintiff began working for Defendants in February 2017.

20. Prior to that time, Defendant Carter Brothers and Defendant Aramark established Defendant Carter Brothers-Aramark as a joint venture. Defendant Carter Brothers-Aramark's management is solely comprised of management members from Defendant Carter Brothers and Defendant Aramark. For instance, Defendant J. Carter serves as Defendant Carter Brothers-Aramark's CEO, while Jeff Davis, who is Defendant Carter Brother's President and Vice-Chairman, works as Defendant Carter Brothers-Aramark's COO.

21. Defendant Carter Brothers-Aramark's Board is comprised of a number of Defendant Aramark's management team, including Trevor Ferguson, Victor Crawford, Jason Coyle, and Blase Iaconlli.

22. Defendant Carter Brother-Aramark's principal place of business is at the same address as Defendant Carter Brother's principal place of business.

4

23. Defendant Carter Brother-Aramark offers the same services that Defendant Carter Brothers and Defendant Aramark offer independently, such as cleaning services, plant services, grounds and landscaping, and more.

24. Defendant Carter Brothers-Aramark's purpose is to combine the companies' resources and experience to compete for service contracts. Defendant Carter Brother is the majority owner of Defendant Carter Brothers-Aramark, thereby allowing the joint venture to compete for contracts as a minority business enterprise ("MBE").

25. In February 2017, Defendant J. Carter informed Plaintiff that Defendant Carter Brothers-Aramark wanted to employ him due to his vast experience in sales, particularly on behalf of MBEs, and his large network.

26. On or about February 23, 2017, Defendants required that Plaintiff execute a non-disclosure agreement so that Defendants could provide Plaintiff with confidential information.

27. Defendant J. Carter informed Plaintiff that Defendant Carter Brothers-Aramark wanted to employ Plaintiff as the Vice President of Business Development.

28. Plaintiff began his employment for the Defendants by drafting a white paper that put his strategic ideas in writing for the Defendants. Plaintiff continued working for Defendants over the next few months.

29. On or about February 26, 2017, Plaintiff forwarded white paper documents to Defendant J. Carter for his review.

30. By the end of April 2017, Plaintiff was working for Defendants on a full-time basis. Specifically, Plaintiff spent from 8:00 a.m. through 6:00 p.m. each day doing, among other things, emailing and calling potential customers, participating on conference calls with other employees of Defendants, meeting with customers, and creating materials for sales presentations.

31. Defendants provided Plaintiff a company email (lberry@cbaramarkifm.com), a computer, training at a uniform plant, uniform shirts with Defendant Carter Brothers-Aramark's insignia, business cards, and reimbursement for travel expenses.

32. Defendant J. Carter, on behalf of the Defendants, informed Plaintiff that he would be paid an annual base salary of $150,000.00, plus the opportunity for commissions. Defendant J. Carter, on behalf of the Defendants, also informed Plaintiff that Plaintiff would be paid retroactively for any work he had performed on behalf of Defendants, yet had not been paid.

33. Defendants failed, however, to pay Plaintiff for his work. Plaintiff made many inquiries to Defendant J. Carter about Defendants' failure to pay him for his work. Defendant J. Carter, on behalf of Defendants, consistently responded by saying Plaintiff would be paid, including retroactive payment for his past work.

34. The longer Plaintiff continued to work for Defendants, the more difficult his situation became because, in addition to receiving no pay each week, the amount he expected to be repaid, based upon Defendant J. Carter's representations, by Defendants increased each week as well.

35. In approximately November 2017, Plaintiff informed Defendant Carter Brothers-Aramark's Project Manager, Lauren Ibarra, that Defendants had not yet paid him at all on his work for Defendants. Ms. Ibarra responded by saying she would raise the issue during Defendant Carter Brothers-Aramark's board meetings.

36. Plaintiff began asking Defendant J. Carter more directly when he could expect to get paid for all his work. In December 2017, Plaintiff sent Defendant J. Carter several emails requesting that Defendants pay him for his work.

37. In January 2018, Plaintiff contacted Ms. Ibarra regarding his pay and needing health insurance for his family. Plaintiff asked Ms. Ibarra if she could talk to Trevor Ferguson about

6

Defendant Aramark putting Plaintiff on its payroll so he could receive payment and health insurance.

38. The day after Plaintiff made that request to Ms. Ibarra, Defendant J. Carter sent Plaintiff a text message regarding Plaintiff's communication to Defendant Aramark employees about the "fact that he [Plaintiff] is struggling financially" given the fact that he has not been paid, saying "[p]lease tell me what the fck [sic] you was [sic] thinking."

39. The following day, February 1, 2018, Defendants sent Plaintiff a letter terminating his employment relationship with Defendants.

## FIRST CAUSE OF ACTION
### FLSA, 29 U.S.C. §201, *et seq*. - Failure to Pay Minimum Wage and Overtime

40. All of the preceding paragraphs are realleged as if fully rewritten herein.

41. Plaintiff was not paid the federal minimum wage for the hours he worked for the Defendants.

42. Plaintiff was not paid an overtime premium for all hours worked over forty in a work week for Defendants.

43. Defendants were aware that Plaintiff was working significantly more than 40 hours per week, but was not receiving overtime compensation for hours worked in excess of 40 per week.

44. Defendants knew or should have known they were required to pay Plaintiff federal minimum wage and overtime pay.

45. Accordingly, Plaintiff was forced to work for Defendants since February 2017 without receiving federal minimum wage and overtime premiums. As a result, Plaintiff has been damaged.

## SECOND CAUSE OF ACTION
**OMFWSA R.C. 4111,** *et seq*. -
**Failure to Pay Minimum Wage and Overtime**

46. All of the preceding paragraphs are realleged as if fully rewritten herein.

47. This claim is brought under Ohio Law.

48. Defendants' repeated and knowing failure to pay Plaintiff Ohio minimum wage and overtime wages for hours worked in excess of forty (40) per week, was a violation of Sections 4111.02 and 4111.03 of the Ohio Revised Code.

49. For the Defendants' violations of O.R.C. 4111.02 and 4111.03, Plaintiff is entitled to recover unpaid wages, liquidated damages, interest, attorney's fees, and all other remedies available under Ohio law.

## THIRD CAUSE OF ACTION
**FLSA, 29 U.S.C. §215(a)(3)**
**Unlawful Termination—FLSA Retaliation**

50. All of the preceding paragraphs are realleged as if fully rewritten herein.

51. Plaintiff was qualified to do his job, as he had been performing his job duties for approximately a year before he was terminated.

52. Plaintiff filed a complaint under the FLSA when he complained about not having been paid.

53. Defendants discharged Plaintiff because he complained about unpaid wages.

54. Defendants' discharge of Plaintiff was unlawful under 29 U.S.C. §215(a)(3).

55. As a result of Defendants' unlawful termination of Plaintiff, Plaintiff has been damaged.

## FOURTH CAUSE OF ACTION
**OMFWSA, O.R.C. § 4111.13(B)**
**Wrongful Discharge—Retaliation**

56. All of the preceding paragraphs are realleged as if fully rewritten herein.

57. Plaintiff was qualified to do his job, as he had been performing his job duties for approximately a year before he was terminated.

58. Plaintiff filed a complaint under the OMFWSA when he complained about not having been paid.

59. Defendants discharged Plaintiff because he complained about unpaid wages.

60. Defendants' discharge of Plaintiff was unlawful under O.R.C. § 4111.13(B).

61. As a result of Defendants' unlawful termination of Plaintiff, Plaintiff has been damaged.

## FIFTH CAUSE OF ACTION
### Breach of Contract

62. All of the preceding paragraphs are realleged as if fully rewritten herein.

63. Over the course of Plaintiff's employment, Defendants promised to pay him for services rendered on behalf of Defendants.

64. Despite Plaintiff's repeated efforts to obtain the payments owed, Defendants failed, without justification to pay Plaintiff the agreed upon compensation for his services.

65. Defendants owe Plaintiff more than $150,000.00 dollars for services rendered. This amount is ongoing in nature.

66. Plaintiff has been and continues to be financially harmed by Defendants' breach.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment

67. All of the preceding paragraphs are realleged as if fully rewritten herein.

68. Plaintiff performed the work of Defendants' Vice President of Business Development for approximately a year and was not compensated by Defendants.

69. Plaintiff has made a demand for payment and Defendants have refused to pay.

70. Because Defendants received the benefits of Plaintiff's services without compensating him, Defendants have been unjustly enriched.

71. Under the circumstances, it would be unjust and inequitable for Defendants to retain the benefits conferred upon them without paying Plaintiff.

72. As a result of Defendants' failure to pay Plaintiff for his services rendered, Plaintiff has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks an award against Defendants in an amount equal to the liability, losses, damages, liquidated damages, punitive damages, attorney's fees, costs, expenses and any other amounts available under the law incurred by Plaintiff for Defendants' violations.

Respectfully submitted,

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
Brian G. Greivenkamp (0095918)
**GIBSON LAW, LLC**
9200 Montgomery Rd., Suite 11A
Cincinnati, OH 45242
(*brad@gibsonemploymentlaw.com*)
(*brian@gibsonemploymentlaw.com*)
Ph: (513) 834-8254

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)